In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4102

KAREN SNIDER,

Plaintiff-Appellant,

v.

BELVIDERE TOWNSHIP, and H. ROBERT FALKENSTEIN,
in his official capacity as Belvidere Township
Assessor and in his individual capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 98 C 50133--Philip G. Reinhard, Judge.

Argued May 17, 2000--Decided June 19, 2000

Before Bauer, Coffey and Kanne, Circuit Judges.

Bauer, Circuit Judge.  Karen Snider ("Snider")
filed suit against her employer, Belvidere Town-
ship, and her supervisor, Robert Falkenstein
("Falkenstein"), after she was fired for com-
plaining about alleged sex-based pay discrimina-
tion in the Assessor's office. The District Court
granted summary judgment in favor of the defen-
dants, finding that a portion of Smith's claim
was time-barred, that she failed to state a claim
under the Equal Pay Act and that her speech was
not a matter of public concern and thus not
constitutionally protected. Plaintiff appeals. We
affirm.

I.  BACKGROUND

Karen Snider worked as a residential deputy
assessor for Belvidere Township from April 1,
1991 until her termination on March 27, 1997.
Snider claims she was fired because she publicly
protested the lower salaries paid to women in the
Assessor's office. The defendants deny that and
counter that Snider was fired because she was
insubordinate and disrupted the harmony of the
office.
The controversy was centered around the hiring
of a less experienced male commercial deputy
assessor whose salary was equal to Snider's.
Snider found out that his salary matched hers at
a March 25, 1997 township Board meeting. She
admittedly went to the Board meeting because she

knew that the payroll portion of the budget was going to be discussed and approved and she wanted to find out what her raise was going to be and how much the new male deputy assessor (John Elder) would be making. To her dismay, she learned that her salary was being raised to $11.80/hour and that Mr. Elder was starting at $11.80/hour. She, of course, expressed her displeasure to the Board, saying it was unfair that they should be paid equally because she had six years seniority and was more qualified than Mr. Elder. The Board approved the salaries anyway.

Two days later, on March 27, 1997, Falkenstein called a department meeting to discuss things. The department at that time consisted of Falkenstein, Snider and two other female deputy assessors, both of whom had also attended the Board meeting two days previously. Falkenstein was upset that his full-time staff members had gone to the Board meeting, behind his back, without speaking to him first. The tempers of Snider and Falkenstein then flared and they ended up in a shouting match, with Snider accusing Falkenstein of paying the men in the office more than the women. Falkenstein responded by telling Snider that if she did not like her salary she was free to resign, but that if she did not do so he would not tolerate any further disruption of the harmony of the office or continued questioning of his authority. Snider did not back down and was fired for insubordination before the meeting ended.

Snider's charge of discrimination filed with the EEOC was not successful and she filed suit in the district court. Her Complaint alleged violations of Title VII of the Civil Rights Act, violations of the Equal Pay Act and a section 1983 First Amendment claim./1 The District Court entered summary judgment in favor of the defendants on all of Smith's claims. She appeals, claiming a multitude of errors: that the District Court erred in holding her Title VII claim based upon the wages of another male who left the Assessor's office in 1996 was time-barred, erred in finding that she failed to state a claim under the Equal Pay Act, and erred in ruling that her speech did not touch upon a matter of public concern and was thus not constitutionally protected. We affirm.

II. DISCUSSION

We review the District Court's grant of summary judgment under the familiar de novo standard, drawing all reasonable inferences in favor of the non-movant. Vakharia v. Swedish Covenant Hospital, 190 F.3d 799, 805 (7th Cir. 1999); Johnson v. Zema Systems Corp., 170 F.3d 734, 742 (7th Cir. 1999). In order to overcome summary judgment, Snider must show specific facts sufficient

to raise a genuine issue for trial. See Fed. R.
Civ. P. 56(c); Vakharia, 170 F.3d at 805. "A
genuine issue for trial exists only when a rea-
sonable jury could find for the party opposing
the motion based on the record as a whole." Roger
v. Yellow Freight System, Inc., 21 F.3d 146, 149
(7th Cir. 1994).

A.      Timeliness Of Title VII Claim For Wage
        Discrimination

Snider sought to prove her Title VII claim, in
part, by relying on the higher salary of another
male deputy assessor, Jerome Witek. Mr. Witek
made $12.00/hour to Snider's $11.07/hour. The
District Court, however, held that Snider's Title
VII claim based on Witek's wages was time-barred.

Section 2000e-5(e) of Title VII provides that a
charge of discrimination must be filed within 300
days after the alleged unlawful employment prac-
tice occurred. 42 U.S.C. sec.2000e-5(e). Failure
to timely file the charge with the EEOC bars any
subsequent civil rights suit in the courts. Terry
v. Bridgeport Brass Company, 519 F.2d 806, 808
(7th Cir. 1975). In this case, the District Court
found that the 300 day time began to run on June
30, 1996, the day Mr. Witek left the employ of
the Assessor's office. Snider filed her charge
with the EEOC on June 5, 1997, 340 days later.

Snider, however, argues that her claim did not
accrue when Witek's employment ceased, but,
rather, accrued anew each time she received her
diminished paycheck. She characterizes her argu-
ment this way in an attempt to place herself
within the "continuing violation doctrine," an
exception which allows a complainant to obtain
relief for a time-barred act of discrimination by
linking it with acts that fall within the statu-
tory limitations period. See Filipovic v. K & R
Express Systems, Inc., 176 F.3d 390, 395-97 (7th
Cir. 1999); Koelsch v. Beltone Electronics Corp.,
46 F.3d 705, 707-08 (7th Cir. 1995). Her attempt,
however, ignores the precedent we established in
Dasgupta v. University of Wisconsin Board of
Regents, 121 F.3d 1138 (7th Cir. 1997), that the
continued receipt of lower paychecks does not
revive past allegedly discriminatory conduct. Id.
at 1139-40.

We continue to believe that in situations such
as this, where a plaintiff is complaining that
she is paid less than similarly situated members
of the opposite sex because of her gender, the
claim of discrimination accrues when the male
leaves his employment. This is because the male's
departure ends the allegedly discriminatory wage
differential (assuming there are no other men

being paid more than the plaintiff for a job requiring equal skill, effort and responsibility). Our brethren in the Second and Sixth Circuits join us in so holding. See Pollis v. New School for Social Research, 132 F.3d 115, 118-19 (2nd Cir. 1997); EEOC v. Penton Industrial Publishing Co., 851 F.2d 835, 837-39 (6th Cir. 1988). As the Sixth Circuit said, to find otherwise, would "redu[ce] the statutes of limitations in employment discrimination cases to a nullity." Penton, 851 F.2d at 839.

Under this reasoning, Snider's Title VII wage discrimination claim had to be filed within 300 days of Witek's departure. It was not. It was filed more than forty days after the time limit and is therefore barred. The order of the District Court finding that plaintiff's Title VII claim was time-barred is affirmed.

B.  Equal Pay Act Claims

The Equal Pay Act prohibits sex-based wage discrimination. 29 U.S.C. sec.206(d)(1); Dey v. Colt Construction and Development Co., 28 F.3d 1446, 1461-62 (7th Cir. 1994). To establish a prima facie case under the Act, the plaintiff must show: "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." Soto v. Adams Elevator Equipment Co., 941 F.2d 543, 548 (7th Cir. 1991), quoting Fallon v. State of Illinois, 882 F.2d 1206, 1208 (7th Cir. 1989). The District Court found that Snider failed to establish the first two of these elements and summarily granted judgment in favor of the defendants. We affirm that judgment, but under a slightly different analysis./2

In Counts I and II of her Complaint, Snider alleges that the defendants violated the Equal Pay Act by starting the less experienced and less qualified John Elder at a salary higher than hers. It is true, that at the time she found out that Elder was hired to be a full-time commercial deputy assessor at a salary of $11.80/hour, Snider was making less money. However, her argument ignores the fact that Elder's employment was to begin on April 1, 1997, the very same day her 40 cent/hour raise was to become effective, thus erasing the pay differential. As the defendants correctly point out, the plaintiff cannot establish her cause unless she can show that similarly situated males were receiving higher wages for the same work. Snider has not done this. In short, she has failed to state a cause of action under the Equal Pay Act. Weiss v. Coca-Cola

Bottling Company of Chicago, 990 F.2d 333, 338 (7th Cir. 1993).

The District Court considered whether Snider would be able to support her Equal Pay Act claim with evidence of Jerome Witek's higher wages, concluding that she could not because Witek's job duties did not "involve equal skill and equal effort when compared to [Snider's] job duties." We, however, do not reach the second prong of the test as we believe that Snider's Equal Pay Act claim with regard to Witek is barred because she never filed an Equal Pay Act claim with regard to Witek and the time in which she could do so has long passed. A claim for discrimination under the Equal Pay Act must be filed no more than two years after the date of the alleged violation, or within three years in the case of a wilful violation. 29 U.S.C. sec.255(a). There being no evidence of a wilful violation, the two year statute is controlling and plaintiff must have filed her cause complaining of Witek's wage no later than June 30, 1998 (two years after Witek left the Assessor's office). She has not done this. Also, our review of her Complaint shows that nowhere in Counts I and II does she even reference Jerome Witek's pay, let alone complain that it violates the Equal Pay Act. There being no timely claim with regard to Witek, then, we do not consider the evidence regarding his wages.

The record shows that Elder's starting salary was $11.80/hour, the same as Snider's salary. The Equal Pay Act mandates the same pay for members of both genders performing equal work. Snider received the same pay and her claim under the Equal Pay Act fails. The order of the District Court granting summary judgment in favor of the defendants on these counts is affirmed.

C.  First Amendment Claims

Snider believes that she was fired from her job as a residential deputy assessor because she complained publicly about the alleged sex-based pay discrimination in the Assessor's office. She brought a claim for the defendants' violation of her First Amendment right to freedom of expression, but the District Court granted summary judgment as to those counts, finding that her statements were not a matter of public concern. We agree with the District Court.

We analyze First Amendment claims asserted by public employees in two steps. First, we determine whether the employee's speech addresses a matter of public concern. Weicherding v. Riegel, 160 F.3d 1139, 1142 (7th Cir. 1998), citing Connick v. Myers, 461 U.S. 138, 146 (1983). If it does, we then balance the employee's interest in

her expression against the state's interest in promoting the efficiency of the public service it performs through its employees. Id., citing Pickering v. Board of Education, 391 U.S. 563, 568 (1968). We do not reach the second prong, the balancing test, unless the employee establishes that her speech involves a matter of public concern. Wright v. Illinois Department of Children & Family Services, 40 F.3d 1492, 1501 (7th Cir. 1994); Vukadinovich v. Bartels, 853 F.2d 1387, 1390 (7th Cir. 1988). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context . . . as revealed by the whole record." Gray v. Lacke, 885 F.2d 399, 410 (7th Cir. 1989), cert. denied, 494 U.S. 1029 (1990), citing, Connick, 461 U.S. at 147-48. The question of whether the speech relates to a matter of public concern is for the court. Campbell v. Towse, 99 F.3d 820, 826 (7th Cir. 1996).

Here, the District Court found that "there is nothing about Snider's activities which would indicate she was acting as anything but an employee complaining about her salary." This conclusion is amply born out by the evidence in the record. Snider admittedly went to the March 25 Board meeting, not to complain about the alleged sexual discrimination, but merely to find out how much her raise was going to be and how much the new male deputy assessor would be making. She never complained that the males were being paid more than the females. She complained only about the fairness of her salary vis a vis other employees, given her tenure. This, together with the fact that Snider said she would have complained about the perceived salary disparity regardless of whether the new employee was a male or female, convinces us that Snider's statements related solely to a personal issue, not to a public concern.

Snider's complaints regarding her salary related to a personal concern. She simply wanted to be paid more than anyone else with less seniority. Such workplace speech, while personally important, does not address a matter of public concern, and thus does not merit First Amendment protection. Thus, the order of the District Court granting summary judgment for the defendants on Snider's First Amendment claims is affirmed.

III.  CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed.

AFFIRMED.

FOOTNOTES

/1 She also alleged a violation of the Age Discrimination in Employment Act, but dismissed the count before the court ruled on her motion for summary judgment.

/2 In considering the District Court's decision on appeal, we may affirm on a ground other than that relied on by the District Court so long as it is adequately supported in the record and the law. Divane v. Krull Electric Co., 200 F.3d 1020, 1026 (7th Cir. 1999).