**Roy W. BENJAMIN, Plaintiff–Appellant,**

v.

**KATTEN MUCHIN & ZAVIS, Defendant–Appellee.**

No. 00–1370.

United States Court of Appeals, Seventh Circuit.

Argued April 25, 2001.

Decided May 11, 2001.

Before COFFEY, MANION, and ROVNER, Circuit Judges.

## ORDER

Roy Benjamin, an African American and a former employee of Katten Muchin and Zavis (KMZ), initiated this pro se lawsuit in 1995, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.;* the Fair Labor Standards Act of 1939, 29 U.S.C. § 201 *et seq.;* and the Civil Rights Act of 1866, 42 U.S.C. § 1981. KMZ denied his allegations, claiming he was terminated for poor performance. The district court entered summary judgment in favor of KMZ, and Benjamin appeals pro se. We affirm.

### I. Background

Benjamin's relationship with KMZ began in mid–1990 when he worked as a paralegal through a temporary placement agency. While there Benjamin met Edward Shealy, the manager of the docketing department, who expressed interest in hiring Benjamin permanently when a position became available. Based on Shealy's recommendation KMZ hired Benjamin as a full-time docket clerk in the docketing department in October 1990, although Benjamin contends he was hired as a paralegal for that department.

During Benjamin's tenure at KMZ, the docketing department employed three other individuals, all of whom reported to Shealy. Karen Martin, an African American, began working in the docketing department in 1986, and Charles Koven, a Caucasian, started in 1987. Additionally, Calvin Holmes, an African American, worked part-time in the evenings. According to KMZ, Koven and Martin re-

ceived higher salaries than Benjamin because they had more experience at the firm.

By January 1991 all employees in the docketing department except Benjamin had received their performance review and a salary increase. Benjamin spoke to Shealy about this, who in turn contacted the director of personnel. Shealy learned that Benjamin had been inadvertently omitted from the list of employees up for review at that time of year, and in March, Benjamin received his raise retroactive to January 1. Benjamin was dissatisfied with the amount of his raise–despite KMZ's contention that Benjamin received a larger percentage increase than the other employees–and requested a meeting with the director of personnel. Benjamin discussed his dissatisfaction with his raise, but did not assert that KMZ was discriminating against him on the basis of his race or gender.

The record contains much documentation of KMZ's concerns with Benjamin's performance. In January 1991 Shealy met with Benjamin to discuss the length of time it was taking Benjamin to complete certain tasks. In a memo to Benjamin's personnel file, Shealy noted his impression that Benjamin was "milking" overtime hours by taking an "inordinately long period of time" to accomplish his assignments. The following month, Martin, who was responsible for monitoring Benjamin's work, expressed concern to Shealy about Benjamin's attitude. According to Martin, Benjamin felt that some attorneys and secretaries were "wasting his time" by asking him to do certain tasks, and he indicated as much by sending them "strong notes." Additionally, Martin reported that Benjamin refused to follow department procedures in filling out time entries and the daily calendar.

By March 1991 Benjamin had withdrawn from the department's petty cash fund $500 that was not attributed to any client. Shealy told Benjamin he could be fired if he did not reimburse the fund within a week. Later that month Martin again spoke with Shealy about Benjamin's performance. She noted that he was stubborn about returning file-stamped copies of documents to attorneys and that he refused to take her suggestions for avoiding overtime work.

In May, Shealy sent Benjamin a memo outlining his noncompliance with several docketing department procedures and identifying areas of improvement "mandatory for your continued employment." In the memo Shealy also limited Benjamin's overtime work and instructed him to refine his attitude toward staff members and others in the firm. Benjamin responded with a memo to Shealy claiming he was unaware of some departmental procedures Shealy mentioned but was certainly following those of which he knew. Benjamin further suggested that it was not his performance that was disturbing the department but, rather, "the ability or lack thereof, of my fellow staff members to get to know me or understand me, because they are intimidated by my personality, assertiveness, and confident air about myself or my demeanor."

Benjamin's performance problems continued despite the warning from Shealy. In July Shealy reprimanded Benjamin about his constant tardiness and instructed him not to be late for a 30–day period or he would be fired. Shealy further ordered Benjamin to reduce his number of overtime hours by not working through the lunch hour.

Two months later, Martin and Koven requested a meeting with Shealy to discuss Benjamin's performance. In his memo to Benjamin's file documenting the meeting, Shealy lists 16 specific concerns including tardiness, poor attitude, substandard work,

and failure to follow department policies. Based on Shealy's recommendation, KMZ terminated Benjamin on September 25, 1991. When Benjamin asked if he could transfer to a paralegal position, KMZ informed him that he was terminated with a "no rehire" status. During Benjamin's exit interview, the personnel director read him the memo from Shealy detailing the reasons for his discharge; Benjamin replied that it was "nothing but lies and fabrication."

Following his termination Benjamin applied for unemployment compensation. KMZ opposed his claim, contending that he committed misconduct in connection with his work. Ultimately, the review board found in favor of Benjamin. Additionally, according to Benjamin, KMZ provided negative references to two potential employers after his termination.

Benjamin filed a charge of race and gender discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission. After receiving a right-to-sue letter from the EEOC dated May 25, 1995, he initiated this lawsuit in September 1995, alleging in his final amended complaint Title VII violations involving race and gender discrimination in hiring and compensation, wrongful discharge based on race and gender, retaliatory discharge, and post-termination retaliation. In addition Benjamin alleged gender-based wage discrimination in violation of the FLSA and race and gender discrimination in violation of § 1981. Following a lengthy discovery period, KMZ moved for summary judgment, asserting that all of Benjamin's claims were either untimely, noncognizable, or meritless. The district court agreed, entered summary judgment in favor of KMZ, and denied Benjamin's subsequent motion to reconsider. Benjamin appeals, challenging the summary judgment grant and the limit on his discovery imposed by the district court.

## II. Analysis

### A. *Title VII Claims*

■ Benjamin first complained that because of his race and gender KMZ hired him into a low-paying position in the docketing department not commensurate with his background and experience as a paralegal. The district court, analyzing this allegation under the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), determined that Benjamin had not made out a prima facie case because he lacked proof that KMZ had a paralegal vacancy that remained open after he was rejected as a paralegal and hired instead into the docketing department. *See Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 515 (7th Cir.1996).

■ Benjamin argues here that he presented *direct* evidence of discrimination, and so the district court was wrong to apply *McDonnell Douglas*. Benjamin asserts that KMZ's admission that he satisfied the first three prongs of his prima facie case constitute direct evidence that should have allowed him to survive summary judgment. Direct evidence, however, is "evidence which if believed ... will prove the particular fact in question without reliance on inference or presumption." *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir.2001) (internal quotation marks and citation omitted). An admission that Benjamin belonged to a protected class, met the qualifications of a paralegal position, and yet was not offered the position does not prove *without inference* that KMZ discriminated based on his race or gender. As such the district court correctly employed the *McDonnell Douglas* framework. Benjamin fails to address the district court's conclusion that the absence

of an open paralegal position at KMZ was undisputed, and so summary judgment on this claim was proper.

Benjamin furthered alleged in his complaint with respect to hiring that KMZ employed a pattern or practice of concentrating African American males in lower-paying departments within the firm (e.g., the docketing department, mail room, and copy center). A pattern-or-practice claim is typically raised in a class action to show that an employer had a wide-ranging policy to discriminate against class members. *See Gilty v. Village of Oak Park*, 919 F.2d 1247, 1252 (7th Cir.1990) (pattern-or-practice theory of discrimination is generally employed in class actions; citing cases). Individual plaintiffs do sometimes use pattern-or-practice evidence to bolster their own disparate treatment claims as evidence of pretext. *See Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 552–53 (7th Cir. 2000); *King v. Gen. Elec. Co.*, 960 F.2d 617, 624–25 (7th Cir.1992). But Benjamin failed even to establish a prima facie case of discrimination, so evidence of a pattern or practice to prove pretext would appear irrelevant.

■ Still, the district court apparently viewed Benjamin's pattern-or-practice discussion as a separate theory. Benjamin failed, however, to marshal evidence of a pattern or practice of discrimination at KMZ. To demonstrate a pattern or practice of discrimination, a plaintiff must show by a preponderance of the evidence that race or gender discrimination was the company's "standard operating procedure–the regular rather than the unusual practice." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 422 (7th Cir.2000) (internal quotation marks and citation omitted). In order to establish a pattern or practice, a plaintiff must prove "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Int'l Bhd.*

*of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Reviewing the evidence before it, the district court concluded that Benjamin offered *no* proof–statistical or anecdotal–of a policy or practice of discrimination by KMZ.

■ Benjamin points to statistics he offered in response to KMZ's motion for summary judgment that, of the 22 African American males employed by KMZ, 20 worked in the lowest compensated positions, such as the docketing department, mail room, and copy center. According to Benjamin, this statistic is direct proof that KMZ deviated from its affirmative action plan and engaged in a pattern or practice of discrimination. This statistical data comes from only a two-week period in December 1991, and the conclusions Benjamin draws are unsupported. Benjamin failed to establish, for example, that any of the 20 African American males was overqualified for the position held or had ever applied for a different position within the firm. Benjamin also asserted during his deposition that one employee with an accounting degree worked in the copy center for three or four years before being assigned to an accounting position. But he offered no admissible evidence to verify his allegations.

In addition to his hiring discrimination claim, Benjamin alleged in his complaint that KMZ also based its decision to fire him on his race and gender. The district court concluded, given the exhibits KMZ introduced regarding concerns about Benjamin's performance, that he failed to establish that he was meeting the legitimate expectations of KMZ. *See Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir.2000). The district court further noted that Benjamin could not prove that KMZ's legitimate reason for terminating

him --- his poor performance --- was pretextual.

■ Here again Benjamin maintains that he offered evidence that the district court erroneously failed to categorize as "direct." He argues that his time sheets and monthly progress and billing reports were direct evidence of satisfactory performance. And he suggests that Koven's salary history and performance and attendance records were direct evidence that similarly-situated employees were treated more favorably. These documents, however, fail to establish discrimination without inference, and so the district court correctly analyzed them as indirect evidence under *McDonnell Douglas*.

■ As to the prima facie case for discriminatory termination, Benjamin asserts that he was meeting KMZ's legitimate expectations because KMZ offered no evidence to support the complaints of his tardiness, failure to complete tasks, refusal to follow department procedures, and unauthorized overtime. The record, however, includes many memos from Benjamin's personnel file documenting the concerns of Shealy and others in the department regarding Benjamin's work. KMZ also introduced deposition testimony from Martin and Shealy identifying problems with Benjamin's work.

Benjamin also challenges the district court's pretext determination in a manner KMZ characterizes as a "shotgun argument." For example, Benjamin argues that the district court should have looked at the totality of the circumstances in evaluating the legitimacy of KMZ's proffered reason for his termination. Benjamin contends that Shealy's repeated threats of termination and KMZ's failure to investigate the complaints about his performance suggest pretext. These assertions are frivolous given the record of memos written to document complaints and Shealy's conversations with Benjamin regarding his performance. Benjamin also argues that Martin and Koven billed as much overtime as he did, and he infers pretext from this fact because Martin and Koven were not terminated. He offered no evidence, however, that the other employees were specifically instructed to reduce overtime hours as was he. Benjamin further asserts that KMZ's decision to write memos about his performance for his personnel file without his knowledge raises questions about the motives behind the memos. Absent more, these facts do not prove the KMZ was being deceitful or that it did not believe that Benjamin was performing poorly. *See Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1012 (7th Cir.2000) (noting that pretext means that the employer did not honestly believe the reasons it offered for the discharge); *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 684 (7th Cir.2000) (defining pretext to mean "deceit used to cover ones' tracks").

■ Benjamin next claimed in his lawsuit that KMZ terminated him in retaliation for "exercising his rights to challenge ... unfair employment practices." The district court acknowledged that Benjamin complained to the personnel director about his raise, but the court found that Benjamin was not engaged in a statutorily protected activity as required to make out a prima facie case. *See Aviles v. Cornell Forge Co.,* 241 F.3d 589, 592 (7th Cir.2001) (prima facie case). Benjamin admitted in his deposition that he did not assert that the low raise was due to race or gender discrimination. Further, the district court determined that Benjamin had failed to establish any causal connection between his expression and his termination.

On appeal Benjamin fails to address the district court's determination that he offered no proof that he engaged in any

activity protected by Title VII. Rather, Benjamin addresses the causal link, pointing out that the first negative performance report he received occurred only three weeks following his meeting with the personnel director to discuss his raise. As the district court correctly concluded, however, Benjamin's retaliation claim fails because he cannot prove that he engaged in statutorily protected activity.

 Finally, Benjamin alleged in his complaint that KMZ violated Title VII by engaging in retaliatory acts after his termination. According to Benjamin, KMZ provided negative references to potential employers and wrongfully opposed his unemployment compensation claim. Post-termination retaliation is cognizable under Title VII and follows the same *McDonnell Douglas* framework for analysis. *Ruedlinger v. Jarrett*, 106 F.3d 212, 214 (7th Cir.1997); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888 (7th Cir.1996). The district court concluded that Benjamin could not raise the claim based on KMZ's opposition to his unemployment compensation application because he had failed to address that allegation in his administrative charge. The district court noted that a claim based on negative references to potential employers was not barred because Benjamin filed the administrative charge prior to the negative references. The district court concluded, however, that Benjamin failed to produce any evidence that KMZ actually gave negative references to potential employers.

 The district court's exhaustion analysis was not entirely accurate, and KMZ's argument that Benjamin's post-termination retaliation claims were barred was correct. A Title VII plaintiff may raise only claims that were addressed with the EEOC or claims that are "like or reasonably related to" allegations in the EEOC charge. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir.1996). We have made an exception, however, for retaliation claims to avoid multiple EEOC filings in cases where the filing of an EEOC charge is the catalyst for retaliation. *Heuer v. Weil–McLain*, 203 F.3d 1021, 1023 (7th Cir.2000); *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 482–83 (7th Cir.1996). Benjamin, however, did not claim that KMZ gave negative references to employers because of his EEOC charge. Nor did he argue that this claim was reasonably related to any claim listed in his EEOC filing. Accordingly, it would have been appropriate for the district court to conclude that all of Benjamin's post-termination retaliation claims were barred because of his failure to exhaust.

On the merits, Benjamin reiterates that KMZ needlessly opposed his unemployment claim and terminated him with a "no rehire" status. He does not, however, respond to the district court's conclusion that this claim is barred because he failed to present it to the EEOC. He also fails to point to any evidence he produced regarding negative references to other employers. Additionally, as with the retaliation claim, Benjamin has not identified any statutorily protected activity for which he suffered post-termination retaliation. The entry of summary judgment was, therefore, proper.

### B. FLSA Claim

 Benjamin argued before the district court that KMZ discriminated on the basis of gender in compensating its employees. According to Benjamin, similarly situated female employees performing equal work with equal effort received at least $6,000 more than Benjamin did. The Equal Pay Act, an amendment to FLSA, requires that differences in pay between members of opposite genders for equal work must be based on factors other than

gender. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 600 (7th Cir.2001). The district court concluded that Benjamin failed to satisfy the prima facie case because the other employees Benjamin discussed shouldered more responsibility than he did and so were not performing equal work. *See id.* Further, the district court noted that KMZ offered a "factor other than sex" that effected the pay differential — experience at KMZ and familiarity with its policies.

 Benjamin argues that he and Koven and Martin all shared the same tasks and were expected to answer telephone inquiries from attorneys and secretaries, input data into the docket system, file and retrieve pleadings from various courts, edit the law bulletin, and fill out their time sheets. Because the FLSA prohibits wage discrimination only if based on gender, *Snider v. Belvidere Township*, 216 F.3d 616, 619 (7th Cir.2000), Martin is the only relevant employee for comparison. And Benjamin fails to refute evidence KMZ offered that Martin bore other responsibilities in the department, including managing the docketing department in Shealy's absence and training and monitoring Benjamin. Benjamin further contends that he was more qualified than Martin because of his prior paralegal experience and that he was held to the same standards as the others, but he was still paid less. Whether two employees perform equal work, however, is a function of whether the jobs involve a "common core of tasks" or whether "a significant portion of the two jobs is identical," rather than the individual qualifications of the employees. *See Howard v. Lear Corp. EEds & Interiors*, 234 F.3d 1002, 1005 (7th Cir. 2000) (internal quotation marks and cita-

tion omitted). Benjamin also attempts to argue that KMZ favors Caucasians in deciding compensation, but a race-based claim is not cognizable under the FLSA. *Snider*, 216 F.3d at 619.

## C. Section 1981 Claim

 In his complaint, Benjamin alleged "negligence for failure to provide an equal opportunity and reckless indifference to federally protected rights." According to Benjamin, KMZ's actions with respect to his hiring, compensation, and termination violated § 1981. A claim under § 1981 includes the same elements and employs the same analysis and methods of proof as a Title VII claim. *Johnson v.. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir.1996). Section 1981 claims, however, must be filed within two years of the alleged violation. *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 (7th Cir. 1999).

Benjamin left KMZ on September 25, 1991, and he first raised this claim in his second amended complaint filed in February 1998. The district court determined that Benjamin's claim was untimely because the actions about which he complained occurred more than two years prior to his complaint. The district court declined to decide whether this claim related back to his original complaint filed September 5, 1995, because even his first complaint was filed almost four years after his termination. In opposition to the motion for summary judgment, Benjamin argued that the continuing violation theory applied and rendered his complaint timely. The district court rejected this argument because Benjamin failed to allege any acts of discrimination within the limitations period.[1]

---

1. The district court *received* Benjamin's first complaint on September 5, 1995, but according to the court the complaint was not *filed*

until September 25, 1995. Consequently, in analyzing Benjamin's § 1981 claim, the district court calculated the two-year period dur-

 The continuing violation theory applies only if specific acts of discrimination occurred within the limitations period. *Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 381 (7th Cir.2000); *Jones v. Merchants Nat'l Bank & Trust Co. of Indianapolis*, 42 F.3d 1054, 1058 n. 4 (7th Cir.1994). Here, the most recent act of discrimination that Benjamin's complaint challenged under § 1981 was his termination on September 25, 1991. In his reply brief, he specified that the last act of discrimination occurred in June 1993 when KMZ provided negative references to a potential employer. He, therefore, identifies no acts in violation of § 1981 that occurred within two years of his original complaint (assuming arguendo that the relation back doctrine applies). Consequently, he cannot invoke the continuing violation theory, and his § 1981 claim is untimely. In any event, Benjamin faces an even more fundamental problem because the failure of Benjamin's Title VII claims forecloses his § 1981 claim. *See Johnson*, 91 F.3d at 940.

## D. Discovery Order

In late 1996, Benjamin filed a motion to compel discovery, arguing that KMZ had not fully responded to his requests. Benjamin's discovery requests sought personnel records for all employees of the firm (including the lawyers) for a ten-year period (1985–1995), despite the fact that he worked there for only one year. At the very least he wanted to include all of the paralegals at KMZ. KMZ argued that only information on employees in the docketing department was relevant to Benjamin's claims because Shealy, who initiated the termination process for Benjamin, had no control over any other departments. The magistrate judge to whom the discovery issue was assigned limited the discovery to records concerning only the members of the docketing department from 1989–1991. Benjamin then filed a motion asking the district court to modify the magistrate judge's order, but the district court declined. On appeal, Benjamin argues that the district court abused its discretion in limiting his discovery requests. He suggests that KMZ misrepresented to the district court that he was hired as a docketing clerk and not a paralegal, and the district court therefore based its discovery ruling on a clearly erroneous fact.

 A district court has wide latitude in structuring discovery, and we will review its decisions only for an abuse of discretion. *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir.1999). In the absence of "actual and substantial prejudice to the complaining litigant," the district court's decision will stand. *Searls v. Glasser*, 64 F.3d 1061, 1068 (1995). Further, if a party fails to comply with Rule 56(f), we will generally not find an abuse of discretion. *Woods v. City of Chicago*, 234 F.3d 979, 990 (7th Cir.2000). In this case, given that Benjamin did not file an affidavit pursuant to Rule 56(f) or request more time for discovery, the district court did not abuse its discretion in limiting discovery and ruling on the summary judgment motion.

## III. Conclusion

Accordingly, we AFFIRM the judgment of the district court.

---

ing which acts of discrimination must have occurred as running from September 25, 1993 to September 25, 1995, rather than September 5, 1993 to September 5, 1995. For purposes here, the September 5 date controls, *see Jones v. Bertrand*, 171 F.3d 499, 503 (7th Cir.1999), but the court's mistake has no bearing on the outcome.