In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1396

PATRICK J. FYFE,

Plaintiff-Appellant,

v.

CITY OF FORT WAYNE, INDIANA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 98-CV-0353--Roger B. Cosbey, Magistrate Judge.

Submitted January 22, 2001--Decided February 22, 2001

Before BAUER, KANNE, and EVANS, Circuit Judges.

EVANS, Circuit Judge. Patrick Fyfe is no shrinking violet. Over the course of his 20-year career with the City of Fort Wayne Parks and Recreation Department, Fyfe has filed numerous lawsuits and administrative agency complaints against his employer. Not surprisingly, he is not particularly popular with his supervisors. In this case, Fyfe contends that those supervisors refused his request for reimbursement of expenses (only $156, hardly a sum worthy of making a federal case out of) associated with a work-related seminar in retaliation for his earlier complaints, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e et seq. In addition, Fyfe alleges that the City violated the Equal Pay Act, 29 U.S.C. sec. 206(d), by making certain overtime payments to a female employee who held the same job he did, but refused to make similar payments to him. The district court granted the City's motion for summary judgment, and we review that decision de novo, drawing all reasonable inferences in favor of Fyfe. Snider v. Belvidere Township, 216 F.3d 616, 618 (7th Cir. 2000)./1

Fyfe began working for the City's parks department in 1979, and at all times relevant to this case held the position of gardener at the Lawton Park greenhouse. Part of Fyfe's responsibilities at the greenhouse involved spraying pesticides containing toxic chemicals,

some of which required quarantine. Accordingly, for a period of time Fyfe was required to clock-out of work several hours early and then return in the evening to perform spraying after other employees had left. The City's obvious motivation for utilizing this system was to limit exposure to dangerous chemicals by completing pesticide spraying after hours, but at the same time avoid paying overtime to Fyfe. When Superintendent of Conservatory and Horticulture Dennis Noak learned of the split-shift arrangement in spring of 1998, he directed Andy Force, Fyfe's immediate supervisor, to put an end to the practice unless Fyfe obtained union approval. On the advice of his union, Fyfe refused to sign an agreement consenting to the split-shift work schedule and foregoing overtime pay. Thereafter, the split-shift arrangement was discontinued, and Fyfe was required to complete pesticide spraying during his regular 8-hour shift.

The parks department employed one other gardener during the relevant time period, a woman named Sharon Zettle. Zettle was the gardener at the Botanical Conservatory, which, unlike the Lawton Park greenhouse, was a plant showcase facility. Zettle performed the same job duties as Fyfe and received the same rate of regular pay. Due to the nature of the Botanical Conservatory, however, Zettle conducted pesticide spraying much less frequently than Fyfe did at the Lawton Park greenhouse. When she did so after hours--meaning after the completion of her 8-hour shift--Zettle was paid "call in" pay. Pursuant to the union contract, an employee entitled to "call in" pay is paid for 4 hours of work, even if the employee completes his or her assignment in 5 minutes and leaves the workplace. The record shows that Zettle received "call in" pay on at least three occasions for after-hours pesticide spraying.

Fyfe bases his Equal Pay Act claim on the fact that Zettle occasionally received "call in" pay but he never did during his 16 years as a gardener. The Equal Pay Act, an amendment to the Fair Labor Standards Act, forbids paying workers of one gender less than workers of the opposite gender in return for doing the same work unless the pay differential is justified by factors other than sex. See Wollenburg v. Comtech Mfg. Co., 201 F.3d 973, 975 (7th Cir. 2000). In order to prove a prima facie case of discrimination under the Equal Pay Act, Fyfe must demonstrate (1) different wages were paid to employees of the opposite sex, (2) the employees perform equal work requiring equal skill, effort, and responsibility, and (3) the employees have similar working conditions. Bragg v. Navistar Int'l Transp. Corp., 164 F.3d 373, 378 (7th Cir. 1998). Once Fyfe clears this hurdle, the burden

shifts to the City to prove that the pay disparity is due to "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. sec. 206(d)(1); see Soto v. Adams Elevator Equip. Co., 941 F.2d 543, 548 (7th Cir. 1991). We have recognized that the Equal Pay Act's fourth affirmative defense is a broad, catch-all exception that embraces a nearly limitless array of ways to distinguish among employees. Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1462 (7th Cir. 1994).

It is undisputed that Zettle received "call in" pay and Fyfe did not. Fyfe runs into trouble, however, in attempting to establish that he and Zettle performed equal work under similar working conditions. In fact, as the district court recognized, Zettle performed more work than Fyfe. On occasions when Zettle received "call in" pay for pesticide spraying, she completed that task after--and in addition to--her regular 8-hour shift./2 When Fyfe performed evening pesticide spraying, on the other hand, he clocked out earlier in the day for several hours. Thus, unlike Zettle, Fyfe never worked more than 8 hours in a day (doing pesticide spraying). It certainly does not violate the Equal Pay Act to pay an employee additional money for additional work.

The true gravamen of Fyfe's Equal Pay Act claim is that Zettle was permitted to work overtime, rendering her eligible for additional pay, but he was denied that opportunity. Indeed, when Fyfe requested permission to continue after-hours spraying even after his split-shift work schedule was discontinued, Mr. Force told him that the City already was paying "call in" pay to Zettle and didn't want to pay it for Fyfe, too. Fyfe characterizes this statement as direct evidence of wage discrimination. But even if the denial of the opportunity to work overtime satisfies the first element of an Equal Pay Act claim--and at least one court has held that it does not, True v. New York State Department of Correctional Services, 613 F. Supp. 27, 30-31 (W.D.N.Y. 1984)--the City has established that the divergent purposes of the Lawton Park greenhouse and the Botanical Conservatory merited the differential treatment. As a public showcase, the conservatory only rarely required spraying; the greenhouse was a growing facility and required more regular spraying. Permitting Zettle occasionally to perform her spraying duties after hours would therefore cost the City much less in "call in" pay than it would to permit Fyfe regularly to spray after hours. Thus there was a legitimate fiscal reason for giving overtime work to Zettle

but not to Fyfe. See 29 U.S.C. sec. 206(d)(1)(iv). In addition, requiring Zettle to spray the conservatory during her regular shift presumably could expose the public to dangerous pesticides, which of course was not a concern at the greenhouse, which was closed to the public. Because any difference in overtime hours is clearly "due to a factor unrelated to gender, there is no violation." Lindale v. Tokheim Corp., 145 F.3d 953, 957 (7th Cir. 1998)./3

We turn now to Fyfe's Title VII retaliation claim. The evidence shows that in June of 1998, Fyfe requested permission to attend a pesticide-related seminar in Columbus, Ohio, in order to earn credits toward maintaining a license he held. When Noak denied Fyfe's request to attend the seminar on City time, Fyfe asked Robert Arnold, Noak's supervisor, to intercede on his behalf. Arnold reported back that Noak informed him Fyfe was not a "team player and didn't deserve to go." Fyfe attended the seminar anyway but was forced to use one personal day and one vacation day to do so, and pay his own expenses. Arnold approved Fyfe's request for time off to attend the seminar.

Upon returning from the seminar, Fyfe, ever persistent, asked Arnold to reimburse him for his travel and hotel expenses, a grand total of only $156.89. According to Fyfe, Arnold stated that he considered Fyfe's request a "fair trade," and told Fyfe to send his expense paperwork directly to Arnold and watch his paycheck for reimbursement. But the reimbursement never came because Arnold merely forwarded the paperwork to the controller's office without signing it. Arnold testified that he did so to "see if something could come of it," even though he believed reimbursement was not warranted because Fyfe's travel did not occur during approved work time and reimbursement was not required under the City's collective bargaining agreement with Fyfe's union. Arnold allegedly brushed off Fyfe's questions concerning the status of his reimbursement in the fall of 1998.

On January 7, 1999, the date of a pretrial conference, Fyfe again inquired of Arnold as to the whereabouts of his expected reimbursement. Arnold replied, "If I have to go across the street to the courthouse, you can forget it" (or something to that effect). When Fyfe informed Arnold that this response could be considered evidence of retaliation, Arnold challenged Fyfe to "go file the charge."

So Fyfe added a claim under Title VII, which prohibits employers from discriminating against an employee "because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. sec. 2000e-3(a). In order to prevail on his claim of discrimination, Fyfe must either offer direct evidence of retaliation or proceed under a burden-shifting approach. Contreras v. Suncast Corp., Nos. 00-1977, 00-2493, slip op. at 15 (7th Cir. Jan. 3, 2001). Direct evidence is that which, "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption," and usually takes the form of an acknowledgment of discriminatory intent by the employer. Kennedy v. Schoenberg, Fisher & Newman, Ltd., 140 F.3d 716, 722-23 (7th Cir. 1998) (quoting Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago, 104 F.3d 1004, 1010 (7th Cir. 1997)). In the absence of direct evidence of retaliation, Fyfe must show (1) he engaged in activity protected under Title VII, (2) he suffered an adverse employment action, and (3) a causal connection between the adverse action and his protected activity. Hill v. American Gen. Fin., Inc., 218 F.3d 639, 645 (7th Cir. 2000). Once a prima facie case is established, the burden shifts to the City to put forth a legitimate and nondiscriminatory reason for its actions, and then back to Fyfe to show that the City's articulated reason is merely a pretext for unlawful discrimination. Rennie v. Dalton, 3 F.3d 1100, 1108-09 (7th Cir. 1993). Fyfe attempts to proceed on both the direct evidence track and the burden-shifting track, but both efforts come up short.

  Fyfe insists that Arnold's January 7 remarks constitute direct evidence of unlawful retaliation. "When a plaintiff proceeds under the direct proof method, allegedly discriminatory statements are relevant . . . only if they are both made by the decisionmaker and related to the employment decision at issue." Stopka v. Alliance of Am. Insurers, 141 F.3d 681, 688 (7th Cir. 1988). Moreover, "isolated comments must be contemporaneous with the [adverse action] or causally related to the . . . decision making process." Kennedy, 140 F.3d at 723 (quoting Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996)). In Miller v. American Family Mutual Insurance Company, 203 F.3d 997, 1005 (7th Cir. 2000), for example, we held that a supervisor's discriminatory statements were irrelevant because the supervisor did not even work for the company at the time of the adverse employment decisions, and thus his bias could not have motivated them.

  Fyfe faces a similar hurdle here. It is undisputed that Fyfe submitted his expense paperwork to Arnold shortly after his travel in

June 1998 and that Arnold forwarded it to the controller's office without endorsing it because he believed, at that time, that Fyfe was not entitled to reimbursement. Arnold has taken no further action with respect to Fyfe's reimbursement request since summer of 1998. Thus, the City's decision not to reimburse Fyfe was complete long before Arnold's statements, which have, for that reason, little probative value. Moreover, Fyfe's lawsuit postdates the City's decision not to reimburse him (the lawsuit was filed on November 12, 1998), so it could not have motivated the decision under any circumstances. See Miller, 203 F.3d at 1006 (affirming summary judgment for employer on pregnancy discrimination claim because decisionmaker was not aware of plaintiff's pregnancy until after decision). Nothing Arnold said--or could have said--fills this gap in Fyfe's theory.

Fyfe's effort to establish a prima facie case under an indirect theory also fails. As an initial matter, we cannot accept Fyfe's bald assertion that the denial of his request for reimbursement of $156.89 constitutes an adverse employment action. Not every unwelcome employment action qualifies as an adverse action; rather, it must cause a materially adverse change in the terms and conditions of employment, "more disruptive than a mere inconvenience or an alteration of job responsibilities." Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996) (quoting Crady v. Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)). Under this standard, we have held that the denial of a raise constitutes a sufficiently material adverse action, Hunt v. City of Markham, Illinois, 219 F.3d 649, 654 (7th Cir. 2000), but that the denial of a bonus does not. Rabinovitz, 89 F.3d at 488-89. The difference is that raises are a normal and expected element of an employee's salary, while bonuses generally are "sporadic, irregular, unpredictable, and wholly discretionary on the part of the employer." Hunt, 219 F.3d at 654. Employees therefore act in reliance upon the expectation of receiving a raise and suffer more deeply when it is denied. Id.

The City's denial of Fyfe's request for reimbursement is more like the denial of a bonus than the denial of a raise. Fyfe does not dispute that the reimbursement was purely discretionary; indeed, prior to leaving for Columbus, he knew that his trip had not been approved by his superiors. And although the record does not reflect the regularity with which City employees attend seminars, and the regularity with which their expenses are reimbursed,/4 we think it's a safe bet that neither is as regular as the

yearly raise most employees receive. Accordingly, we hold that the City's refusal to reimburse Fyfe's travel and lodging expenses was not an adverse employment action for purposes of Title VII.

Moreover, even if the City's failure to reimburse Fyfe constituted an adverse employment action, he has not sustained his burden of establishing that the action was motivated by his protected conduct. As stated above, this lawsuit can have no connection to the City's decision not to reimburse Fyfe because that decision was made almost 6 months before Fyfe asserted his claim. And although Fyfe had brought earlier charges against the City, the most recent of those was filed in January 1997. In order to establish a causal connection via mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct. Sweeney v. West, 149 F.3d 550, 557 (7th Cir. 1998). In the absence of any other evidence of a causal link, the 18-month interval in this case is insufficient proof of causation. See Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4 months insufficient); Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 321 (7th Cir. 1992) (6 months insufficient). Because Fyfe cannot establish a prima facie case of Title VII retaliation, we need go no further. The judgment of the district court is

AFFIRMED.


/1 The district court also granted summary judgment to the City on three separate retaliation claims based on (1) the City's decision to suspend him for 5 days and demote him to "the tree gang," a tree maintenance crew, (2) the City's refusal to interview him for a promotion, and (3) the City's refusal to approve his attendance at a subsequent out-of-town seminar. Fyfe does not appeal the district court's decision with respect to these incidents of alleged retaliation.

/2 It is unclear why Zettle received "call in" pay instead of the regular overtime rate of time and one-half. "Call in" pay, as we read the collective bargaining agreement, is required only when an employee is called to work by supervisors at a time when he or she is not otherwise scheduled to work. As Fyfe points out, there is no evidence that Zettle was called to work from home, as opposed to merely staying at work at the end of her shift to complete the spraying. But no matter. In either event, Zettle actually worked more hours than Fyfe.

/3 Recent events confirm this conclusion. Since the filing of this lawsuit, Fyfe and Zettle have switched locations and Zettle, as the greenhouse gardener, has been required to complete her spraying duties during her regular 8-hour shift.

/4 Fyfe makes much of the fact that the City paid Zettle's registration fee for the Columbus seminar the year following Fyfe's attendance. But Zettle's trip was approved by her supervisor and took place under a new collective bargaining agreement that required the City to pay those expenses. Zettle was not reimbursed for any other expenses.