Bobby L. TURNER, Plaintiff,

v.

**HOUSING AUTHORITY OF JEFFERSON COUNTY and Marsha Gibbons, individually and in her official capacity as Executive Director of the Housing Authority of Jefferson County, Defendants.**

No. CIV.00–4307–JPG.

United States District Court,
S.D. Illinois.

Jan. 23, 2002.

A. Courtney Cox, Hart & Hart, Benton, IL, for plaintiff.

Marc D. Sherman, Rena M. Honorow, Marc D. Sherman & Assoc., Lincolnwood, IL, for defendants.

## *ORDER*

GILBERT, District Judge.

Bobby L. Turner has sued his former employer, the Housing Authority of Jefferson County, Illinois, ("HAJC") alleging that he was subjected to unlawful race discrimination that eventually resulted in his termination. Turner also alleges that HAJC illegally fired him for exercising his First Amendment right to free speech. Turner has made the same claims against Marsha Gibbons, the Executive Director of the Housing Authority, for her involvement in his termination.

The Defendants have filed a motion for summary judgment (Doc. No. 25), along with supporting memoranda (Doc Nos. 26, 31). The Plaintiff has responded to the motion (Doc. No. 30). For the reasons stated below, the Court will grant in part and deny in part the motion for summary judgment.

Also before the Court is a motion by the Defendants to strike the affidavit of John Kemp. (Doc. No. 22). The Plaintiff has responded to the motion. (Doc. No. 23). For the reasons stated below, the Court will deny the motion.

## *STANDARD*

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In this case, the Court must review the record in the light most favorable to Turner and draw all reasonable inferences in his favor. *See Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir.2001).

█ The Plaintiff's brief states that "[m]otions for summary judgment in employment discrimination cases must be approached with added rigor . . . ." The Seventh Circuit has recently addressed its previous use of the phrase "added rigor" in employment discrimination cases. In *Alexander v. Wisconsin Department of Health and Family Services*, 263 F.3d 673 (7th Cir.2001), the Court stated:

> Although it is understandable how one might infer from our regular use of this phrase that we meant to communicate a more stringent standard to be used in reviewing employment cases, the original use of this phrase indicates that it was merely included to stress the fact that employment discrimination cases typically involve questions of intent and credibility, issues not appropriate for this court to decide on a review of a grant of summary judgment. Thus, regardless of our inclusion of the phrase "added rigor" in prior cases, we review a district court's decision to grant a motion for summary judgment on a claim involving issues of employment discrimi-

nation as we review any case brought before this court involving the review of a grant of summary judgment.

*Alexander*, 263 F.3d at 681. Therefore, this Court will analyze the instant motion for summary judgment using the same standard as it would to analyze any motion for summary judgment, keeping in mind that any genuine issues of material fact about intent or credibility should not be resolved at this stage.

## BACKGROUND

### Undisputed Facts

Pursuant to Local Rule 7.1(h) the parties have submitted a joint statement of undisputed facts as part of the summary judgment motion packet. (Doc. No. 27). The parties agree that the following facts are undisputed.

Bobby Turner is an African–American male. *Answer to Complaint*, ¶ 6. Turner was hired by the Housing Authority of Jefferson County ("HAJC") as a part-time employee on November 20, 1995. *Gibbons Affidavit*, ¶ 2. On the same day, the HAJC hired Gary Newell as a part-time employee. *Gibbons Affidavit*, ¶ 3. Newell is a Caucasian male. On April 1, 1996, Turner and Newell were both hired as full-time maintenance employees and given "Maintenance I" status. *Gibbons Affidavit*, ¶¶ 4, 6. On April 1, 1997, both Turner and Newell were promoted to "Maintenance II" status. *Gibbons Affidavit*, ¶ 7. Neither Turner nor Newell received another promotion during their respective tenures with the HAJC. *Gibbons Affidavit*, ¶ 8. Turner and Newell performed the same duties while they were Maintenance II employees. *Turner Deposition*, p. 36. Newell resigned from his position with HAJC on June 22, 1998. *Gibbons Affidavit*, ¶ 10.

Turner complained to Marsha Gibbons, Executive Director of the HAJC, on sever-

al occasions that he was entitled to a raise and promotion because he was doing the same work as Maintenance III and IV employees. *Turner Deposition,* pp. 40, 47–48. Specifically, Turner claims that he complained about an HAJC policy that required him to wear a beeper and take after-hours calls. *Gibbons Affidavit,* ¶ 23–26. That policy went into effect in August 1998. Turner was off work from August 12, 1998 through February 1, 1999 with an injury. *Gibbons Affidavit,* ¶ 24. When Gibbons returned to work in February 1999, he was no longer required to take after-hours calls. *Id.,* ¶ 25. Turner never actually took any after-hours calls. *Turner Deposition,* pp. 150–51.

On July 2, 1999, Turner began a scheduled vacation. On July 13, 1999, when Turner returned, Gibbons fired him. In the meantime, on July 6, 1999, the HAJC's outside attorney, David Overstreet, interviewed Annette Woodward and Yolanda Taylor at the request of Gibbons. *Overstreet Affidavit,* ¶ 5. The reason for Overstreet's investigation, the results of his investigation and the effect that those results had on Gibbons' decision to terminate Turner are disputed.

The Federal One–Strike policy requiring the eviction of tenants if tenants or their guests are involved in criminal or drug offenses is issued to HAJC by HUD and HAJC is required to enforce this policy in order to receive its funding. *Gibbons Affidavit,* ¶¶ 11, 13. After his termination, Turner picketed the HAJC regarding what he believed was the unfair treatment of tenants with regard to evictions conducted because of violations of the Federal One–Strike Policy. *Id.,* ¶ 15. In particular, following his termination, Turner protested the fact that the HAJC could use employees with prior drug convictions to evict tenants under the One–Strike Policy. *Id.* Turner never picketed the HAJC prior to his termination. *Id.*

*Disputed Facts*

The Defendants maintain that Turner was fired because he made threats of violence to other employees and that neither Turner's race nor his previous complaints had anything to do with the decision to fire him.

According to the Defendants, on June 23, 1999, maintenance office employee Annette Woodward reported to her supervisor, Warren Stark, that Turner had made threatening remarks to her. Specifically, the Defendants maintain that Woodward told Stark that Turner had threatened to send a "ticking" package to the HAJC and that they should "look out." *Woodward Deposition,* p. 34–35. The Defendants maintain that Turner also made a veiled threat to "shoot everyone" at the HAJC. *Id.* The Defendants maintain that Stark passed along Woodward's report of this incident to Gibbons. *Gibbons Deposition,* pp. 14–15. The Defendants maintain that Gibbons then spoke directly to Woodward, who described the incident, stating that a summer worker, Yolanda Taylor had also been present. *Gibbons Deposition,* pp. 17, 33. Gibbons maintains that she almost immediately reported the incident to the police and the FBI.

As noted above, it is undisputed that Gibbons asked HAJC's outside counsel, Overstreet, to conduct an investigation into the threat incident. It is undisputed that Overstreet interviewed Woodward and Taylor. According to the Defendants, Woodward confirmed the report that she had made to Gibbons. *Overstreet Affidavit,* ¶ 6. According to the Defendants, Taylor confirmed Woodward's story but believed Turner was joking. *Overstreet Affidavit,* ¶ 8. According to Defendants, Overstreet reported his findings to Gibbons. *Overstreet Affidavit,* ¶ 10. Defendants maintain that Gibbons made the decision to terminate Turner solely on the

basis of Overstreet's report. *Gibbons Deposition,* p. 12.

Turner, however, contends that he never made any threats, that the investigation of June / July 1999 was a sham and that he was targeted by Gibbons because of complaints that he made about his lack of promotion and about the HAJC's drug-related policies. Turner has testified that the last time he made the complaints was on or around June 30, 1999—two weeks before he was fired. *Turner Deposition,* p. 131. Turner claims that, at that time, he complained both that he had not been promoted and about the HAJC's drug-related policies.

Specifically, the Plaintiff offers several pieces of evidence that he believes undermines the credibility of Gibbons' story about the investigation. The Plaintiff's most important evidence is the testimony of Yolanda Taylor, who contradicts Woodward's version of the June 23 incident and denies that she made comments to Overstreet supporting Woodward's story. Taylor supports Turner's story that he never threatened anyone. *Taylor Deposition,* pp. 73–75; *Taylor Affidavit.*

The Plaintiff has also discovered phone records indicating that Gibbons did not contact the police until about a week after she claims that she learned of the threats. This contradicts Gibbons' story that she contacted the police almost immediately. According to the Plaintiff, this evidence undermines the credibility of Gibbons' whole story.

Moreover, Turner alleges that Gibbons had an animosity towards all African–Americans, and that her attitude was demonstrated by racist comments that Gibbons made in the workplace. Turner offers the testimony of several people that overheard Gibbons make racist comments in the workplace. *See Phillips Deposition,* p. 10 (a former employee testifying that she heard Gibbons say "lazy nigger never wants to come to work on time" around 1992 or 1993); *Chiapelli Deposition,* pp. 6, 11, 12 (the spouse of an HAJC employee testifying that he overheard Gibbons say "we're not paying that black SOB anything" sometime in 1997); Kemp Affidavit, ¶ ¶ 7–9 (a former employee stating that he heard Gibbons make racist comments and use the word "nigger" several times); Taylor Deposition, pp. 24, 26 (testifying that she heard Gibbons use the word "nigger.") The plaintiff offers no evidence that Gibbons made racist comments about Turner, that Turner was ever aware of any racist comments while he worked at HAJC or that Gibbons ever directed racist comments to Turner.

## *ANALYSIS*

### I. *Title VII / Section 1981*

In Counts I and II, Turner has asserted four forms of race-based discrimination in violation of Title VII (Count I) and § 1981 (Count II):(a) hostile environment, including racial comments; (b) denial of promotion from Maintenance II to Maintenance III status; (c) disparate treatment, including orders that Turner take after-hours calls; and (d) retaliatory discharge.

■ Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Similarly, § 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to the full and equal benefit of the laws ... as is enjoyed by white citizens." 42 U.S.C. § 1981. Because Section 1981 and Title VII claims are analyzed in the same manner, *Eiland v. Trinity*

*Hosp.,* 150 F.3d 747, 750 (7th Cir.1998), the Court will simultaneously review Turner's claims under Title VII and Section 1981. Each of the alleged forms of race-based discrimination, must be analyzed separately.

## A. *Hostile Environment*

With respect to Mr. Turner's hostile environment claim (*Plaintiff's Complaint,* Count I ¶ 13), the evidence does not establish an inference that he was subjected to a hostile environment actionable under the antidiscrimination laws.

"For ... harassment to be actionable, it must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere." *McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 479 (7th Cir.1996). Because "Title VII is not directed against unpleasantness *per se* but only ... against discrimination in the conditions of employment," *Carr v. Allison Gas Turbine,* 32 F.3d 1007, 1009 (7th Cir. 1994), we consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). "[I]solated and innocuous incidents will not support a hostile environment claim." *McKenzie,* 92 F.3d at 480.

"The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Cooke v. Stefani Management Services, Inc.,* 250 F.3d 564, 566–67 (7th Cir. 2001).

The random use of a racial epithet or stray remarks are insufficient to support a hostile environment claim. *Faragh-*

*er v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *McPhaul v. Board of Comm'rs,* 226 F.3d 558, 567 (7th Cir.2000).

When harassing statements are "directed at someone other than the plaintiff, the impact of [such] 'second hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff." *McPhaul v. Board of Commissioners,* 226 F.3d 558, 567 (7th Cir.2000) (internal quotations and citations omitted)..

In this case, each of the derogatory comments that the Plaintiff alleges were unknown to the Plaintiff prior to his termination. The Plaintiff does not allege that Gibbons ever addressed him using the term "nigger" or any other derogatory term. The Plaintiff offers no other support for his hostile environment claim. In fact, in the Plaintiff's response to the Defendants' motion for summary judgment, the Plaintiff apparently abandons his attempt to make a hostile environment claim.

This Court finds that the evidence offered by the Plaintiff does not support a claim under Title VII or Section 1981 for hostile environment discrimination. Turner could not have subjectively perceived Gibbons' comments as severe or pervasive so as to alter the conditions of employment when Turner did not learn about the comments until after his employment ended.

## B. *Failure to Promote*

Turner alleges that he was denied promotion from Maintenance II to Maintenance III status because of his race. *Plaintiff's Complaint,* Count I ¶ ¶ 22–23. The evidence presented by the Plaintiff, however, does not create a genuine issue

of material fact about whether Turner was denied a promotion because of his race.

■ A plaintiff alleging race discrimination under Title VII and § 1981 can prove such discrimination by providing direct evidence of an employer's discriminatory intent or by showing disparate treatment using indirect evidence and the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Turner does not offer any direct evidence that the denial of promotion was based on race. Although there is some evidence of inappropriate remarks made by Marsha Gibbons, the Plaintiff does not offer any evidence connecting those remarks to the decision not to promote Turner. Stray remarks, unrelated to the employment decision in question do not constitute direct evidence that the decision was racially motivated. *See, e.g., Curry v. Menard*, 270 F.3d 473, 476 (7th Cir.2001); *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir.2001).

■ Thus, for Turner's "denial of promotion" claim to survive summary judgment, the Plaintiff must prove a prima facie case of discrimination under the burden-shifting method, which, in the denial of promotion context, requires him to show that: (1) he is a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff. *See Payne v. Milwaukee Cty.*, 146 F.3d 430, 434 (7th Cir.1998). It is undisputed that Turner satisfies the first criterion. The Plaintiff has failed, however, to establish triable issues of fact as to the other elements of the *prima facie* case.

■ First, the Plaintiff has completely failed to put forward any evidence that there was a Maintenance III position open while he was employed by the Housing Authority. Second, the Plaintiff has failed to put forward any evidence about the qualifications required for a Maintenance III worker. Third, the Plaintiff has offered no evidence about his own ability to do that job. Finally, despite an allegation that "white employees were promoted," the Plaintiff has not put forward any evidence that a non-African-American with equal or lesser qualifications was promoted to the Maintenance III position.

On the other hand, the Defendants have put forward undisputed evidence that an identically situated Caucasian employee was promoted on the same schedule as Turner. *Gibbons Affidavit* ¶¶ 2–10. Newell, a Caucasian, and Turner were both hired as part-time maintenance employees on November 20, 1995. Newell and Turner were both made full-time employees on April 1, 1996 and both designated as Maintenance I workers. And, Plaintiff and Newell were both promoted to Maintenance II status on April 1, 1997. Newell was not further promoted before he resigned in June 1998. Finally, the Defendants contend that no other maintenance worker was promoted during the Plaintiff's employment, and the Plaintiff's response either concedes or fails to challenge that fact.

Therefore, the Court finds that the evidence offered by the Plaintiff does not support a claim under Title VII or Section 1981 for denial of promotion. The Court need not consider whether the Defendants have proffered a legitimate reason for not promoting the Plaintiff, because the Plaintiff has failed to offer any evidence establishing the second, third and fourth elements of his *prima facie* case.

## C. *Disparate Treatment*

Turner alleges that, during his employment with the Housing Authority, he was

treated differently than similarly situated employees. *Plaintiff's Complaint,* Count I ¶¶ 18–20. Specifically, he alleges that he was required to take after-hours calls and wear a beeper, that only Maintenance III and IV workers were generally required to take after-hours calls and that no other Maintenance II worker was required to take after-hours calls. *Id.*

The Plaintiff does not offer any direct evidence that the requirement that he take after-hours calls and wear a beeper was imposed because of his race. The evidence of inappropriate remarks made by Gibbons, unrelated to the employment decision in question do not constitute direct evidence that the decision was racially motivated. *See, e.g., Curry v. Menard,* 270 F.3d 473, 476 (7th Cir.2001); *Gorence v. Eagle Food Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir.2001).

■■■ Thus, for Turner's "disparate treatment" claim to survive summary judgment, the Plaintiff must prove a prima facie case of discrimination under the burden-shifting method, which, in the disparate treatment context, requires him to show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action, and (4) he was treated less favorably than others who were similarly situated. *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 919 (7th Cir.2001). The Plaintiff has failed to establish a triable issue of fact as to the third and fourth elements of his *prima facie* case.

■■■ First, the Plaintiff has not established that he suffered a tangible adverse employment action. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus-*

*tries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) citing with approval *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir.1993) (stating that "[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"); *see also Fyfe v. City of Fort Wayne,* 241 F.3d 597, 601 (7th Cir.2001) (denial for reimbursement for travel and lodging expenses at seminar not an adverse employment action); *Oest v. Illinois Dept. of Corr.,* 240 F.3d 605 (7th Cir.2001) (negative performance evaluations not adverse employment actions); *Bell v. Environmental Prot. Agency,* 232 F.3d 546, 555 (7th Cir. 2000) (cancelling a conference call with the plaintiff and failing to greet her or speak to her were trivial matters that were not adverse employment actions); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994) (reassignment to more inconvenient job insufficient).

■■■ In other words, "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an employee did not like would form the basis of a discrimination suit." *Murray v. Chicago Transit Auth.,* 252 F.3d 880, 888 (7th Cir.2001).

The parties have not directed the Court to a controlling case directly on-point, but the Court has concluded that this case is similar to the ones cited above and that the Plaintiff has not alleged a tangible adverse employment action. The requirement that the Plaintiff wear a beeper and take after-hours calls did not constitute a materially adverse change in employment.

Even if the requirement would otherwise have constituted a materially adverse change, the requirement apparently had little or no effect on Turner. The Plaintiff has not disputed that the policy was implemented in August 1998, that Turner was off work from August 12, 1998 to February 1, 1999 with an injury and that when Turner returned to work he was no longer required to take after-hours calls. In fact, it is undisputed that Turner never actually answered an after-hours call.

■ Moreover, the Plaintiff has failed to put forward any evidence showing that he was treated less favorably than other similarly situated employees. Although the Plaintiff's Complaint alleged that Caucasian Maintenance II workers were not required to take after-hours calls (*Plaintiff's Complaint*, Count I ¶ 20), the Plaintiff has not put forward any evidence that any Caucasian Maintenance II worker was not required to take after hours calls.

Therefore, the Court finds that the evidence offered by the Plaintiff does not support a claim under Title VII or Section 1981 for disparate treatment.

D. *Retaliatory Discharge—Allegation that Discharge was a Result of Complaints About Employment Actions*

Turner makes "retaliatory discharge" claims in Counts I and II, alleging that he was fired in retaliation for his previous complaints about what he perceived as the racially discriminatory practices of the Housing Authority. *Plaintiff's Complaint*, Count I ¶¶ 8–12 (alleging that Turner was fired because of his "previously voiced opposition to racially discriminatory practices, policies, and customs of the Housing Authority and racial animosity toward Af-

rican–Americans, including Turner"). Because these claims appear within the Plaintiff's employment discrimination counts, the Court will assume that the Plaintiff intended to allege that he was terminated as a result of complaints that he made about the HAJC's employment practices.[1]

The Defendants argue that the Plaintiff makes the retaliatory discharge claim for the first time in the Plaintiff's response to the Defendants' motion for summary judgment. On the contrary, as noted above, the Plaintiff's Complaint clearly asserts a claim for retaliatory discharge, and the Plaintiff has never argued that he was fired simply because he is African–American.

Title VII forbids an employer to discriminate against an employee because he has "opposed any practice made an unlawful employment practice by [Title VII], or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a); *Clark Co. Sch. Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1509, 149 L.Ed.2d 509 (2001) (*per curiam*).

■ To establish a retaliation claim under Title VII, a plaintiff may present direct evidence of retaliation or proceed using a burden shifting mechanism. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601 (7th Cir.2001); *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir.2001). In this case, the Plaintiff does not offer any direct evidence that his termination was in retaliation for protected activity. As discussed above, the evidence of stray racist remarks made by Gibbons, absent a showing of a connection between those remarks and a specific employment decision, do not con-

1. The Plaintiff makes a separate "retaliatory discharge" claim in Count III, alleging that he was terminated because he complained about the HAJC's drug-related policies. In Count III, the Plaintiff contends that his termination violated his First Amendment rights. The Court will consider the Plaintiff's First Amendment claim separately.

stitute direct evidence that the decision was racially motivated. *See, e.g., Curry v. Menard,* 270 F.3d 473, 476 (7th Cir.2001); *Gorence v. Eagle Food Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir.2001).

In order to prevail on a claim for retaliation under Title VII using the burden-shifting mechanism, a plaintiff must first establish a *prima facie* case by showing that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action by his employer, and (3) there is a causal link between the protected expression and the adverse action. *Fyfe v. City of Fort Wayne,* 241 F.3d 597, 601–02 (7th Cir.2001); *Aviles v. Cornell Forge Co.,* 241 F.3d 589, 592 (7th Cir.2001). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Aviles,* 241 F.3d at 592. If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext for discrimination. *Aviles,* 241 F.3d at 592.

### 1. *Plaintiff's Prima Facie Case.*

In this case, the Court finds that the Plaintiff has made a *prima facie* case for retaliatory discharge under Title VII and Section 1981.

First, the Plaintiff has put forward some evidence that Turner engaged in statutorily protected activity. In an affidavit, Turner has stated that on June 29, 1999, during a meeting with Marsha Gibbons and Warren Stark, he stated that he felt that he had been denied promotion and previously forced to answer after-hours calls because of his race. Mr. Turner claims that he told Gibbons and Stark

that he planned to file a charge with the EEOC.[2]

Second, the Defendants do not dispute that Turner's termination was an adverse employment action.

Third, the Court finds that the temporal sequence of the alleged events establishes a causal relationship for the purposes of the Plaintiff's *prima facie* case. *See Clark Co. Sch. Dist. v. Breeden,* 532 U.S. 268, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (*per curiam*); *Sweeney v. West,* 149 F.3d 550, 557 (7th Cir. 1998). To establish a causal connection merely by temporal proximity, the employer's adverse action must follow "fairly soon" after or be "very close" to the employee's "protected conduct." *Breeden,* 121 S.Ct. at 1511; *Fyfe v. City of Fort Wayne,* 241 F.3d 597, 603 (7th Cir.2001) (18–month interval between expression and adverse employment action does not show causation); *Hughes v. Derwinski,* 967 F.2d 1168, 1174–75 (7th Cir.1992) (four months insufficient); *Juarez v. Ameritech Mobile Comm., Inc.,* 957 F.2d 317, 321 (7th Cir.1992) (six months insufficient); *compare Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1314–15 (7th Cir.1989) (one week sufficient); *Johnson v. Sullivan,* 945 F.2d 976, 980 (7th Cir.1991) (one day sufficient). The fact that the plaintiff was fired two weeks after his complaints to management is a short enough time to establish the necessary causal link. *See McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796–97 (7th Cir.1997) (collecting cases).

In this case, Turner was fired on July 13, 1999, two-weeks after allegedly complaining of racial discrimination and threatening an EEOC action. Turner

**2.** The Defendants argue that Turner's affidavit is inconsistent with his deposition and should be disregarded. The Court finds that the affi-davit is not inconsistent with Turner's deposition, but rather, it merely contains testimony in addition to the deposition testimony.

went on vacation on July 2 and was terminated his first day back to work. The Court finds that the temporal proximity of Turner's alleged complaint and his termination establishes a causal link for the purposes of the Plaintiff's *prima facie* case.

### 2. *Defendant's Burden to Articulate a Legitimate Reason.*

 Having established the *prima facie* case, the Plaintiff has shifted his burden to the Defendants to explain the reason for its termination of Turner. *McDonnell,* 411 U.S. at 802–03, 93 S.Ct. at 1824. "An employer may account for its conduct by articulating at least some legitimate, nondiscriminatory reason for discharging the employee." *Lenoir v. Roll Coater, Inc.,* 13 F.3d 1130 (7th Cir.1994) citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In this case, the Defendants state that Turner was fired because management honestly believed that Turner had directed threats towards other employees. The testimony of Gibbons, Woodward and Overstreet supports that story.

The Court finds that the Defendants' explanation has a reasonable basis in fact. The Court also finds that Turner's alleged conduct, if true, would be sufficient to warrant discharge. There is no question that if the Defendants honestly believed that Turner actually made threats of violence, that Turner could be rightfully discharged. *See Lenoir v. Roll Coater,* 13 F.3d 1130, 1133 (7th Cir.1994) (holding that if management honestly believed that the plaintiff employee possessed a weapon, wielded at co-workers and made menacing comments then management had a reasonable explanation for discharging the plaintiff employee).

### 3. *Pretext.*

Because the Defendants' explanation had both a reasonable basis in fact and Turner's conduct, if true, would be sufficient to warrant discharge, the burden of proving a Title VII violation shifts to the Plaintiff to show that the Defendants' explanation is merely a pretext for retaliatory discharge. *Lenoir v. Roll Coater,* 13 F.3d 1130, 1133 (7th Cir.1994). The precise question before the Court on summary judgment is whether Turner has "provided evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies." *Alexander v. Wisconsin Dep't of Health and Family Services,* 263 F.3d 673, 683 (7th Cir.2001).

 Thus, "[i]f the only reason an employer offers for [taking adverse action] against an employee is a lie, the inference that the real reason was a forbidden one ... may reasonably be drawn. This is the common sense behind *McDonnell Douglas.*" *Bell v. E.P.A.,* 232 F.3d 546, 550 (7th Cir.2000) (quoting *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1124 (7th Cir.1994)). "Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes summary judgment." *Id.* (quoting *Perdomo v. Browner,* 67 F.3d 140, 145 (7th Cir.1995)).

 Additionally, racist remarks that do not constitute *direct* evidence, may be considered at the pretext stage of a plaintiff's indirect evidence case, in conjunction with other proof, to call into question the truthfulness of the employer's stated reasons for an adverse action. *Pafford v. Herman,* 148 F.3d 658, 666 (7th Cir.1998); *Huff v. UARCO, Inc.,* 122 F.3d 374, 385 (7th Cir.1997); *Rush v. McDonald's Corporation,* 966 F.2d 1104, 1114 (7th Cir. 1992) (stating that "evidence of racial hostility, if demonstrated, might still be rele-

vant to show that the reasons given for the plaintiff's discharge were merely pretextual").

Therefore, at the pretext stage, the Court must consider that Taylor's testimony contradicts the testimony of Woodward, that several people have testified that Gibbons made racist comments in the workplace and that there are discrepancies between Gibbons' story and the HAJC phone records. Considering all of this evidence, along with the Plaintiff's *prima facie* evidence, the Court finds that the Plaintiff has put forward sufficient evidence from which a rational trier of fact could infer that the Defendants' stated reason for Turner's termination was pretext.

As noted above, employment discrimination cases often hinge on questions of credibility. This case is such a case. On summary judgment, courts are not permitted to assess the credibility of the various testimony before them. This Court has not done so here. Every reasonable inference must be made in favor of the non-moving party. This Court has done so here. Finding that the record contains conflicting testimony as to material issues of fact, the Court has concluded that the Plaintiff's claim for retaliatory discharge cannot be resolved by summary judgment.

II. *First Amendment—Allegation that Discharge was a Result of Complaints About HAJC's Drug–Related Policies.*

In Count III of his Complaint, the Plaintiff attempts to state a First Amendment retaliation claim under 42 U.S.C. § 1983. Turner alleges that he was fired because he complained about the HAJC's drug-related policies. Turner alleges that he complained about the HAJC's policy under which tenants are evicted if a family member or guest of a tenant is arrested or convicted of a criminal offense involving drugs. Specifically, Turner alleges that he complained that this policy was unfair in light of the fact that the Housing Authority employed a Caucasian male who had been convicted of a criminal offense involving drugs. *Plaintiff's Complaint,* Count III, ¶¶ 13–14. In Count III, Turner also alleges that he was fired because he complained about the treatment that he personally received as an employee.[3] *Plaintiff's Complaint,* Count III, ¶¶ 15–20.

In order for Turner to establish a § 1983 claim based on the First Amendment, he must demonstrate that: (1) his conduct was constitutionally protected and (2) his conduct was a substantial or motivating factor in the defendants' challenged actions. *See Thomsen v. Romeis,* 198 F.3d 1022, 1027 (7th Cir.2000).

Therefore, the Court must first determine whether Turner's speech addresses matters of public concern. *Weicherding v. Riegel,* 160 F.3d 1139, 1142 (7th Cir.1998), citing *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context ... as revealed by the whole record." *Gray v. Lacke,* 885 F.2d 399, 410 (7th Cir.1989), cert. denied, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990), citing, *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. The question of whether the speech relates to a matter of public concern is for the court. *Campbell v. Towse,* 99 F.3d 820, 826 (7th Cir.1996).

In this case, three alleged expressions are involved, namely (1) Turner's complaints about his own conditions of employ-

---

**3.** The Plaintiff makes exactly the same factual allegations in Count III as he made in Counts I and II. The Court has already analyzed these allegations under the antidiscrimination statutes, but a different analysis is required under the First Amendment.

ment, (2) Turner's complaints about the Housing Authority's so-called "One–Strike" policy, and (3) Turner's complaints about the Housing Authority's employ of a Caucasian who had been arrested and convicted of drug crimes to evict tenants under the One–Strike policy.

 The Defendants argue that Turner's complaints about his own employment conditions do not involve a public concern. In the Plaintiff's response to the motion for summary judgment, the Plaintiff either concedes, or at least, does not challenge this argument. Therefore, the Court has concluded that Turner's complaint about his own job conditions are outside the scope of First Amendment protection.[4]

 Moreover, the Plaintiff's response to the motion for summary judgment disavows the argument that his termination was a result of his complaints about the HAJC's "One–Strike" policy. Rather, the Plaintiff chooses to focus exclusively on Turner's third alleged expression—his complaint about the HAJC's employ of a Caucasian who had been arrested and convicted of drug crimes. *See Plaintiff's Response* p. 17 (stating "[Turner] was not complaining about the One–Strike policy. Rather, he was complaining that a white employee with drug arrests and convictions was being used to evict black tenants.").

First, the Court must determine whether Turner's complaint about the HAJC's employ of a Caucasian with drug convictions to evict tenants pursuant to the HAJC's One–Strike drug policy was a matter of public concern. The Plaintiff concludes, without citing a single case, that Turner's complaint about the HAJC's drug policies qualifies as a matter of public concern. *See Plaintiff's Response*, p. 17. On the other hand, the Defendants, without citing a single case, conclude that the complaint amounts to only a "personal beef on Plaintiff's part ...." *See Defendant's Reply to Plaintiff's Response*, p. 8.

The Court's own research reveals that whether Turner's alleged complaint to Gibbons included *content* that might be considered a matter of public concern is a close call. In *Michael v. St. Joseph Co.*, 259 F.3d 842, 846–47 (7th Cir.2001), the Seventh Circuit has stated that if a complaint is "centered upon personnel matters and the operation of the [government] Department" it is outside the scope of the First Amendment. Turner's complaint is about a personnel matter. He was complaining about the job responsibilities of one particular co-worker. On the other hand, the essence of Turner's alleged complaint was that he believed that it was unfair for the HAJC to employ a Caucasian, who had been convicted of drug crimes, to evict tenants because they had been convicted of drug crimes. Thus, Turner's complaint might be construed as addressing a matter of public policy and public concern.

 The Court's analysis, however, is not limited to an examination of the content of Turner's speech. In addition to the content of Turner's speech, the Court must also consider the form and the context of Turner's speech. "[T]he fact that

---

4. This result is consistent with the general rule that the First Amendment is implicated when a public employee speaks as a citizen upon a matter of public concern, but not as an employee upon matters only of personal interest. *See Myers v. Hasara*, 226 F.3d 821, 825–26 (7th Cir.2000); *Button v. Kibby–Brown*, 146 F.3d 526, 529–30 (7th Cir.1998).

The Court, however, is not applying the rule. Rather, the Court finds that the Plaintiff has conceded that his complaint about his employment conditions did not involve a matter of public concern. The Court is not obliged to make an argument that the Plaintiff has conceded.

an employee speaks up on a topic that may be deemed one of public import does not automatically render his remarks on that subject protected." *Smith v. Fruin*, 28 F.3d 646, 651 (7th Cir.1994). Rather, the Court must " 'look at the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?' " *Callaway v. Hafeman*, 832 F.2d 414, 417 (7th Cir.1987) (quoting *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir.1985)). "Where considerations of content, form, and context suggest that an employee raised a topic of societal interest for 'personal reasons' rather than a desire to air the merits of the issue," *Smith v. Fruin*, 28 F.3d 646, 652 (7th Cir.1994), or solely to "bolster [his] own position in a private personnel dispute with [his] superiors," *Cliff v. Bd. of School Com'rs of City of Indianapolis*, 42 F.3d 403, 411 (7th Cir. 1994), the speech is not entitled to First Amendment protection.

In *Connick v. Myers*, 461 U.S. 138, 148, 103 S.Ct. 1684, 1690–91, 75 L.Ed.2d 708 (1983) the Supreme Court noted that the plaintiff employee "did not seek to inform the public that the District Attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases," and the Court held that the employee's complaints made solely within the D.A.'s office were not within the scope of First Amendment protection.

In *Wallscetti v. Fox*, 258 F.3d 662, 667 (7th Cir.2001) the Court stated that "[t]he fact that the complaints were made during the course of an apparently long-running dispute with her immediate supervisors, the context of and apparent motivation for her speech, also indicates that the speech was not directed toward airing a matter of public concern."

In this case, Turner alleges that he made his complaint about the HAJC's drug-related policies on June 29, 1999 to Gibbons. Turner does not allege and has put forward no evidence that he sought to inform the public of his complaint prior to his termination. His pre-discharge complaint to Gibbons was not made as part of the public dialogue. Only after his discharge did Turner publicly air his complaint. Moreover, his alleged complaint to Gibbons on June 29 was made simultaneously with Turner's personal complaints about his employment and in the context of an apparently long-running dispute between Turner and his immediate supervisor.

Accordingly, this Court concludes that, based on the record before it, the purpose of Turner's complaint about the HAJC's drug polices was simply to further his own goal of expressing his personal displeasure with his employer. Further, the Court concludes that Turner made the complaint primarily for the personal reason of bolstering his own employment gripes. The Court cannot conclude that Turner's central motivation was to uncover wrongdoing or to bring an issue to the attention of the public. Turner's complaint was more like a personal grievance. Therefore, Turner's complaint about HAJC's drug policies did not involve a matter of public concern and is outside the scope of First Amendment protection.

Because the Court has concluded that Turner's alleged complaints are outside the scope of First Amendment protection, the Court need not consider whether his complaints were a substantial or motivating factor behind his termination. The Court finds that the evidence offered by the Plaintiff does not support a claim under § 1983 for First Amendment retaliation.

*III. Motion to Strike Kemp Affidavit.*

The Defendants have made a motion to strike the affidavit of John Kemp. (Doc. No. 22). The Defendants argue that the Court should grant the motion because the Plaintiff failed to disclose Kemp's address during discovery. The Defendants argue that "[i]t is inequitable to permit Plaintiff to provide testimony from a person he claimed he was unable to locate." The Plaintiff has responded by noting that Kemp is a former employee of the Defendant and that, therefore, the whereabouts of Kemp "would have been known to Defendants." (Doc. No. 23).

The Court's disposition of the instant summary judgment motion does not depend on the existence of the Kemp affidavit, and, its absence would not have resulted in a different outcome. Therefore, the Plaintiff's failure to disclose Kemp's address has been harmless.

The Court will ameliorate any possible future harm to the Defendants by extending discovery for the limited purpose of allowing the Defendants an opportunity to depose Kemp.

### CONCLUSION

The Defendants' Motion for Summary Judgment (Doc. No. 25) is **GRANTED, in part,** as follows: In Counts I and II, the Plaintiff's claims for hostile environment, failure to promote and disparate treatment are hereby **DISMISSED with prejudice.** Count III, in its entirety, is hereby **DIS-MISSED with prejudice.**

To clarify, the Plaintiff's claims for retaliatory discharge under Title VII and Section 1981, found in Counts I and II have not been dismissed. To the extent that the Motion for Summary Judgment seeks dismissal of the retaliatory discharge claims found in Counts I and II, the Motion is **DENIED.**

The Defendants' Motion to Strike the Affidavit of John Kemp (Doc. No. 22) is

**DENIED.** Discovery shall be extended until February 23, 2002, for the limited purpose of allowing the Defendants to depose John Kemp.

**IT IS SO ORDERED.**