Leo THOMPSON, et al., Plaintiffs–
Appellants,

v.

G.E.S. EXPOSITION SERVICE,
Defendant–Appellee.

No. 01–2055.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 26, 2001.

Decided Feb. 6, 2002.

Before ROVNER, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

### ORDER

In this case, plaintiffs, six African-American carpenters, allege that defendant G.E.S. Exposition Service ("GES"), a general trade show contractor, racially discriminated against them in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* as amended and 42 U.S.C. § 1981, when hiring carpenters at the McCormick Place convention center in Chicago, Illinois. In addition, plaintiffs allege that GES retaliated against them after plaintiffs filed a complaint with the EEOC. The district court, in a memorandum opinion, applied the standard established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and found that plaintiffs did not present sufficient facts to make out a prima facie case of either discrimination or retaliation, and granted summary judgment in favor of GES. Plain-

tiffs appeal and we affirm for the reasons given below.

## I. BACKGROUND

GES is a general contractor specializing in set-up and take-down services for convention and trade shows in Chicago, including those held at McCormick Place. GES does not keep carpenters on staff, instead hiring union carpenters on a day-by-day basis from a pool of available carpenters who show up daily during set-up and take-down periods. These carpenters are chosen on an as-needed basis for the variety of jobs available for a given project for a given event. There are several foremen responsible for choosing those work crews, and while records are kept by GES and the carpenters' union of those chosen for work crews, no records are kept of those carpenters who show up but not hired.

Plaintiffs have been part of GES carpenter pools at McCormick Place since 1996. They allege that GES foremen hire white carpenters for their crews to the near-exclusion of African–Americans. As proof, they describe their observations of low numbers of African–Americans on various crews on particular days and describe their own employment history with GES. Plaintiffs also provide their annual income from GES in particular years, which was lower compared to those thirty carpenters earning the highest pay from GES.

In addition to their discrimination claims, plaintiffs presented retaliation claims based on alleged statements made by GES foremen and undesirable work assignments plaintiffs received after they filed a complaint with the EEOC in 1996.

## II. ANALYSIS

We review the district court's decision granting summary judgment de novo. *see.* *e.g., Grube v. Lau Indus., Inc.,* 257 F.3d 723, 727 (7th Cir.2001), viewing the evidence in the light most favorable to plaintiffs as the nonmoving party and making all reasonable, justifiable inferences in their favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Intentional Discrimination

 One of the criteria that plaintiffs must satisfy to make a prima facie case of discrimination under the *McDonnell Douglas* standard is that similarly situated employees received more favorable treatment. 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Since plaintiffs fail to make this showing, they cannot make out a prima facie claim, so we affirm the district court's grant of summary judgment.

 When presenting a claim of intentional discrimination, plaintiffs can use different types of evidence. *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). However, there must be some underlying analytical framework that makes such evidence meaningful. Plaintiffs' description of quantitative disparities in income between plaintiffs and other carpenters employed by GES and occasional observations about individual events has no such framework, but merely string anecdotes together instead of systematically evaluating GES's practices. While the examples that plaintiffs provide may be illustrative of discrimination in a system that easily accommodates subtle forms of discrimination, racial or otherwise, these observations are not enough to show that similarly situated white carpenters were treated more favorably by defendants than plaintiffs.

GES usually hires carpenters at McCormick Place on an as-needed basis from a general pool of carpenters who show up on-site that day. Exactly how many car-

penters are in the pool on a given day, the racial composition of the pool on a given day, or the qualifications of those hired as compared to those left behind in the pool is not described with any level of certainty by plaintiffs. Instead, plaintiffs merely allege that their individual wages from GES were significantly less than at least thirty other carpenters in particular years. These thirty carpenters are described as "similarly situated" to plaintiffs because, like plaintiffs, they are: 1) union carpenters; 2) worked at McCormick Place; 3) had the same three GES supervisors; 4) worked out of the pool system; and 5) showed up for at least 75% of the GES-serviced programs at McCormick Place.

However, these characteristics provide little basis for establishing similar circumstances. At the most basic level, plaintiffs do not affirmatively demonstrate that the thirty carpenters that plaintiffs compare themselves to are white, or at least not African–American. Furthermore, we are given no information regarding the expertise of these thirty individuals, no distribution of their regular vs. overtime hours worked, no overall work history with GES, or other factors which could cause them to earn more from GES-related jobs than plaintiffs.

In addition to not knowing whether plaintiffs are similarly situated as to the set of thirty carpenters they describe, we have no way of knowing where each group stands in relation to the general pool of carpenters that show up at McCormick Place. Were the thirty carpenters top earners out of a pool of one hundred? Five hundred? Five thousand? Likewise, where are plaintiffs relative to their fellow carpenters? As this court has said before, "a showing of discrimination requires more-much more than simply identifying employees who obtained jobs around the same time that the plaintiff[s] [were] look-

ing for a position." *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612 (7th Cir.2000). By simply using wages as a proxy for jobs hired for by GES and looking to an arbitrary number of the top wage-earners, plaintiffs do not show they are similarly situated to the thirty carpenters they describe, let alone to the pool of carpenters (even white carpenters) generally.

Though the anecdotal evidence presented by plaintiffs has a ring of truth that, if further supported, could have gone toward proving plaintiffs' claims, their showing was insufficient for a prima facie claim, and we affirm the district court's grant of summary judgment to GES.

## B. Retaliation

■ The district court granted defendant's motion to strike certain portions of plaintiffs' testimony as inadmissible. Looking to plaintiffs' retaliation claim, the court found insufficient evidence to show that the actions described by plaintiffs were taken by GES in retaliation for the plaintiffs' filing of a complaint with the EEOC. In their opening brief, plaintiffs do not address the district court's grant of GES's motion to strike portions of plaintiffs' affidavits, and have waived any appeal. As defendant correctly points out, this waiver cannot be cured via plaintiffs' reply brief. *See United States v. Magana*, 118 F.3d 117, 119 n. 15 (7th Cir.1997).

■ Examining those portions of the record that remain, the incidents that plaintiffs describe as retaliatory are either too attenuated or isolated to be considered adverse actions, a necessary component of a prima facie retaliation claim. *See Brenner v. Brown*, 36 F.3d 18, 19 (7th Cir.1994). For example, plaintiffs claim that income disparities between them and other specific carpenters resulted from retaliation,

though they offer no evidence from which one could reasonably infer that this pay differential was altered after the EEOC complaint was filed. Plaintiffs also list specific undesirable assignments they received and other desirable work assignments that they did not receive as further examples of retaliatory adverse actions. Undesirable work assignments and being passed over in the work pool for others are natural consequences of large jobs with a multitude of tasks and of having more people in the pool than there are jobs available at any given time. These incidents do not rise to the level of "adverse employment actions" for plaintiffs' retaliation claim. *See, e.g., Murray v. Chicago Transit Authority*, 252 F.3d 880 (7th Cir. 2001) (refusal to approve travel request not retaliation); *Fyfe v. City of Fort Wayne*, 241 F.3d 597 (7th Cir.2001) (denial of reimbursement for seminar expenses not adverse action); *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605 (7th Cir.2001) (negative performance evaluations not adverse employment actions). Therefore, summary judgment was properly granted to GES.

Since plaintiffs cannot present a prima facie case of either discrimination or retaliation, we AFFIRM the district court's granting of summary judgment for defendant GES.